Inri Nguyen, Donald Reed appearing for Appellant, J. Scott Bovitz appearing for Appley. Good morning, Mr. Reed, you want to reserve some time for rebuttal? Yes, please. Five minutes. Five minutes. Very good. All right. Good morning. Please go ahead. Thank you. Good morning. May it please the Court. I represent Lyndon Nguyen, the Appellant. The matters in this appeal are relatively simple, as far as I'm concerned. There was two good friends entered into what are normally two joint venture agreements regarding two different properties in Florida. During the trial, my client testified she understood it to be one agreement where she could transfer net proceeds from one real estate project to the other. The bankruptcy court disagreed, held that there's two separate agreements. With respect to one property, there was pre-petition litigation in the state of Washington, that's called the Forbes property, that concerned a different joint venture agreement, a different... I'm not sure it was only about the one property. Wasn't that case in Washington about both properties? No, it was only about the Forbes property. And what it was... How did it include the other property then in the calculation of the damages? It did not. So how did it get to 330? I'm sorry? How did it get to the judgment amount? Yeah, I believe that the trial judge took into consideration what she had invested total. Isn't that the Downing property including? Well, the Downing property was sold before the Washington... I understand, but as the judge found, the monies weren't... Depending on what breach of contract or embezzled or defalcation or willful malicious, but that is the core of the other half that went into the judgment that was entered and amended. But it wasn't... The Downing property was already sold, so the judgment was for the money that she had invested with Ms. Nguyen. And most of that judgment is actually for the attorney's fees. But the Downing property had already been sold and there was no damages per se about any sort of misappropriation. But the Washington state court judge did include the amount that Ms. Bowie invested in that first property too, correct? Was it her total investment in both properties, right? I believe so. I'll have to double check. It had to be to then back out the money from Forbes to net down to the 89 before the attorney's fees and the interest and the cost. So it had to include... Struggle with the math too. It kind of got to work that way. Yeah. And to a certain extent that... To the extent that the Washington court decided that, then that is contradictory to what the bankruptcy court held. Because the bankruptcy court held that these were two different agreements. I mean, that was our argument at trial, was that Ms. Bowie received about 80% of her investment back. And that's exactly what the other partner... But by virtue of the litigation which compelled the sale. I mean, you're parsing it pretty thin there. Well, it's in the record. My client tried to do everything she could to avoid the litigation. She offered her a note and... And that's not really relevant here. I mean, unless you can explain why, but I don't see how that is. You're only challenging damages at this point, right? Yeah. The issue of preclusive effect of that Washington court judgment as to the alleged defalcation and the willful malicious injury. Those are two different things. But you're not challenging the embezzlement and defalcation. I think the standard of review is too difficult for me to cross that bridge with a clear and clear judgment. Isn't the problem that you have this judgment, which sets out the damages, and that is really the universe of damages to work with. Right. But the actual wrongdoing that is non-dischargeable is the embezzlement or the defalcation, I should say, of the downing sale proceeds. And that's only a tiny subset of what was actually going on in the Forbes action because... But it sets the damages. I'm sorry. But the critical part is that it sets the damages. And that's established as a judgment. You don't even have to get to preclusion. But that judgment concerns different issues, though. It's not just the alleged defalcation. It includes her failure to timely sell the Forbes property. But if you have a breach of contract action, it comes up in pre-petition, there's a judgment on the pre-petition contract. There are tons of cases that flip over into bankruptcy, and which is 523, A2, A4, A6. And that contract damage is going to form the basis, ultimately, of the non-dischargeable judgment. But there's two contracts here. And one partnership. Defalcation only happened under one contract. It did not happen under the second contract. To the extent that you're saying that... Are you saying the court found it did not happen under the second contract? Well, it couldn't... Yeah. The alleged defalcation concerns the Downing property regarding the Downing contract. Let me see if I'm following you correctly. If, in your mind, what the state court did in Washington was really just come to a conclusion about the Forbes property, are you taking the position there was no determinations relevant in the state court and the Downing property? Correct. All right. So to the extent that Judge Albert, the Bankruptcy Court, believed it was operating on something that was preclusive, there was no such thing? Is that the idea? Yes. Okay. With respect to Downing? Yes. Okay. Thanks. Tells me where you're coming from. Yeah. Okay. Any further questions? Or I may reserve... Oh. And then the other issue was with the amount of the attorney's fees. So this was a one-day bench trial with another morning of argument. Ms. Bowie filed a motion for attorney's fees for $230,000, I believe. In their fee application or in their motion for fees, they admitted that approximately one-third of those fees were essentially for matters unrelated to the adversary proceeding, contested matters in the bankruptcy case, and fees not incurred in the adversary proceeding. So my argument is that those fees were not, that portion of the fees were not properly awarded by Judge Albert. Okay. All right. And reserve the rest of your time. Thank you. Thank you. Bovitz. Good morning. Good morning. Please court. We have great jobs. You have a great job. I have a great job. My job sometimes involves the back and forth of testimony in trial courts, and your job is to look at how the judge pieced that all together, how Judge Albert did. And I've been here before, and sometimes it's hard to figure out what the bankruptcy court was saying. Not here. Here we have a long memorandum of decision that the judge entered on February 8th after a full day of testimony, going through all of the details, giving the conclusions, and then separate briefing and a separate long decision attached to the ultimate judgment explaining how did the judge get to the attorney's fees, how did the judge calculate the damage. So you could see into Judge Albert's mind. Well, there's one phrase I don't understand that Judge Albert used. He says he's going to award damages in parallel with the Washington State Court. Is that preclusion? Is that based on an independent evaluation of the evidence? Is it both? What do you think he meant by in parallel with? He uses the phrase collateral estoppel in one of the briefs, and there were two determinations by the judge. One, 523A4, he says whatever Washington State Court, which is King County, King County determined that's all non-dischargeable under 523A4, and then when determining attorney's fees makes a separate statement with respect to being non-dischargeable. So he found that with regard to both properties, there was fiduciary defalcation or embezzlement or both? Both, yes. 523A4, he says one partnership, two properties, and in the one partnership, two properties, that was dealt with in King County. When King County litigation began, there was in fact one property had been sold, quote unquote, at the fire sale. One property just wasn't being rehabbed, so the money was being held, the property was being held. With respect to 523... So was that the defalcation? Was that the property wasn't being rehabbed? The defalcation was, there were two parts of the defalcation in connection with this. There were, we tried to argue 523A2 misrepresentation with respect to qualifications and so forth, but it was the failure to turn over the proceeds that were required in the two agreements that Ms. Wynn, pronounced Wynn, the appellate, failed to turn them over, failed to disclose that, and all of the other misrepresentations collectively resulted in two parts. One, embezzlement with respect to money, and two, defalcation with respect to fiduciary duty, and the court said it's both. What's the defalcation with regard to the second property that wasn't sold, wasn't turned into cash until it was under the supervision of the Washington State Court? What's the defalcation with respect to that property? She, the appellant, Ms. Wynn, failed to do anything with it. She had promised initially four months, then six months, then it ultimately was two and a half years before it was sold under court supervision, so it's... Well, wasn't the testimony that she didn't finish her kitchen? Well, that is her testimony. Okay. Okay, but there's a lot of testimony. And Judge Alpert said, I do not believe that testimony, or how do I ignore that? No, the judge determined that he thought that the property had not been rehabbed completely, but the testimony that's... But see, here's my problem, and I think it's not unlike Judge Ferris and Judge Sprakers. I'm not entirely sure what the Washington Court did, and to the extent that Judge Alpert says I'm relying on that, I'm further confused. I mean, let me ask a simple... I'm further confused. What is the rest here? What's the race here? What is it? R.E.S. What's the R.E.S. here? The race is the partnership money that was invested... Not the properties themselves in which it was supposed to go. It was the money contributed by Ms. Bowie, who's present. She put $330,000, $35,000 into that. Right. And the partnership then took the money, that is, Ms. Wynn took it, and she bought two properties. That's lovely. That's lovely. The result of that is she gets the money back, right? That's the judgment. She gets the amount of money that she had invested back. Right, plus the pre-petition interest at 12%. You don't see where the problem is there? I mean, there's an obligation to invest money into a property. Yes. I'm not sure what happened with respect to the Downey property. We can come back to that if we need to. With respect to the Forbes property, your argument is, well, nobody did what they were supposed to do with this property. So the property becomes the R.E.S. as well, doesn't it? I mean, why is the right remedy just giving the money back? Well, because there was a six-year delay between then and now. What does that change? I mean, why is the remedy for a defalcation just give her the money back as opposed to assess damages? They had an agreement. I mean, as I read the agreement, there's a 75-25 split in the profits if there were any, right? And the agreement, did the agreement talk about what happens if the property simply isn't completed on time? It said that it would be completed within six months, ultimately. Right. It wasn't completed within six months. Debtor failed to take the actions with respect to both properties. The first property was sold. Okay. So there's damages. Right. So why are the damages just giving me the money back? Well, because there's a delay, delay of time. Okay. I think you should move on. Why isn't that just breach of contract? I think it's the underlying point. How does that get to be embezzlement or breaches fiduciary with that defalcation? Judge Albert determined from all the various statements made at the testimony at trial that Ms. Wendt misled our client with my client. That sounds like 523A2. No, he didn't determine it by respect to 523A2. That's the point. I mean, that's piling on what Judge Lafferty is saying is there's layers of confusion here that we can't align into a straight linear path to get to the judgment that was entered. Or otherwise, help us do that. Yes. We're finding this confusing. The deal, the whole TRAN concept is just on the side. That's just... Okay. For now, sure. Okay. That doesn't mean anything. Ms. Wendt said to Ms. Bowie, give me $335,000. I will, Ms. Wendt, on behalf of this partnership, this joint venture is the phrase she uses in her agreements that you drafted. I will go buy two properties. I will flip them right away. The initial testimony at trial is I can do it in four months. That was one of the exhibits provided with a Vietnamese phrase with respect to that. And she didn't. Ms. Wendt got married, did other things. And only after Ms. Bowie started to complain was there any action with respect to either property. Properties were bought right away. They become partnership property under Washington law, even though they're in the name of Wendt. What happened then is after Ms. Bowie continued to complain, Ms. Wendt started to do something with respect to the first property. She sold it and then didn't tell. Ms. Bowie had been sold, lied to Ms. Bowie, admitted on the stand that she lied to Ms. Bowie with respect to that. And then took the money and paid Ms. TRAN, who Ms. Bowie testifies. I don't know who Ms. TRAN is or what's going on with respect to that. Still has a property. Still hasn't moved to redevelop it. Ms. Bowie continues to complain for another year. Nothing happens. And then more than a year after that first sale, she sues and state court says, I got a partnership. I put in $335,000. I don't have anything. Well, here's what, let me ask a really stupid question. It sounds to me like the remedy here was just kind of a rescission. I didn't hear you. It sounds like a rescission. You just get your remedy. Well, that wasn't the complaint. State court was. No, I understand that part. But why isn't the remedy, doesn't it seem like a rescission remedy to you? I mean, is anybody assessing damages in the way you think you might? What might have happened with this property? What are the expectations? And, you know, why is there a difference between what actually got paid and what should have been paid? That's nowhere in that judgment as far as I can tell. Help me out if it is. King County entered a partial summary judgment and a full summary judgment, then a first partial judgment, then an amended final judgment and went through the specific calculations and ultimately said, this was kind of a good thing for Ms. Wynn. Hey, it was $335,000. I, the court, ordered the sale of the second property. You got $240,000. I subtract that from $335,000, I get $389,000. But now, I add to that, because of this long delay of time, pre-judgment interest at 12%, it's high in Washington, but that's their state thing. Post-judgment interest awarded $100,000 of attorney's fees less a credit for a sanction that had been awarded. And that equals roughly the same amount. It's not that the court said, then I'm going to award $330,000 for the money. You only have $89,000 left of principal. And for that, here's your judgment. Now, before that amended final judgment was entered, Ms. Wynn filed Chapter 7. We had to get relief from the stay, annulment, to go back and allow the court to do the calculations. And then, with all of those pleadings, of the 259 pleadings that we admitted, and there were some 36 exhibits, 259 exhibits, including pleadings. We had a lot of pleadings that went in Washington, where there was a lot of difficult back and forth. But in the exchange of pleadings, the court went through some careful calculations. The amended final judgment actually has, line by line, how they came up with that amount of money. Then, the testimony of the how and why. How did you get the money? What did she do with it? What were the reasons for the delay? Did it matter that she was pregnant or not pregnant? That's a measure by Judge Albert, who says, I determined, he determined, not an abuse of discretion, based on the testimony, based on the exhibits, that that was a 523A4. The top line number that the Washington State Court began with, the 335, that's the amount that Ms. Bowie invested. That wasn't the amended final judgment. No, I understand. But the top line, he started from making the calculations, right? Yes, Your Honor. Okay. That, to me, sounds like the beginnings of a rescissionary remedy. Give her back the money she invested. Well, if that had been the prayer in connection with the state court, perhaps that would have been something. Maybe there wouldn't have been a bankruptcy. Maybe the judge would have made a determination in Washington for something different. But the judge in King County did not. Then the question is, of course, 523, that's the jurisdiction of the bankruptcy court. Court said, 523A2A, no, Bovitz, she made some misrepresentations, some boastful exaggerations about Ms. Winn's skill. That's not enough. 523A4 determined both breach of fiduciary duty, because there was a partnership, and the various obligations set forth in the agreements that Ms. Winn drafted were not provided for. That's a breach of that and its embezzlement. Then under 523A6, the court said, there is a difference for damages. 523A6 is, well, how much money did you get from that first sale and what did you do with it? From the first sale, which is the downing property, you took $156,000 or whatever the exact number is, I can't remember, and you had distributed it to your creditor, Ms. Tran, and then you kept the rest and quote, unquote, loaned $10,000 to Ms. Bowie, and for that, it's 523A6. That's why the judge had us brief further and argue with respect to the calculation of damages. After the big memorandum decision, the court says, tell me how I should do that. We had fat briefs going back and forth in connection with this. In the end, the court said, got it, and I'm going to determine 523A4 100% equal to Washington State and 523A6, a lesser amount, and gave the calculation in connection with that. I want to ask you a question about the attorney's fees before you run out of time, and that is, one thing that gives me pause is the, I understand, it looks to me like the amounts you billed include work done on the objection to exemptions, which is set for trial in December. That hasn't been decided yet. Has not been decided yet, yes. Right. Why is it appropriate to include those services for an amount that's still pending in the fee award in this manner? Actually, in the objections to exemptions, they have been partially resolved. There were five different items, four of them been resolved. What remains is the homestead, and that's not done. The reason is the same reason Judge Albert said. It's almost impossible to break apart the exact work on a given moment as to whether it's working ultimately toward the 523 or toward the objections or exemptions or toward a resolution, consensual or otherwise. That's the reason, Your Honor, not because some work doesn't deal with all of those different aspects. So will you include future fees in that? I didn't hear you say that. Will you include future fees in some form of manner of an attempted judgment either to amend the 523 or within the order that you get as to the exemption? Well, I believe that Ms. Mui would want to reserve her right to ask for further fees. I don't know if she would or she would authorize that to happen, or even in connection with this appeal. Depends, of course, on the result in connection with that. I don't know, Your Honor. Okay. I appreciate it. It's an unusual and interesting case, and thank you for your time. Thank you. Okay. Mr. Reed, you've got quite a bit of time, eight minutes plus. People are very cannily reserved a lot of time. Thank you, Your Honor. First, the party said litigate the fraud issue, the fraud in the inducement of the two contracts where the total damages would, the total amount invested would arguably be non-dischargeable, but Ms. Mui went on that issue. The judge did not find that she committed fraud in the inducement. The only non-dischargeable or the wrongful conduct that gives rise to the non-dischargeable judgment is the defalcation or the misappropriation of the downing sale proceeds. And so the trouble is that's the wrongdoing, and then making an entire judgment that largely sounds in restitution non-dischargeable is essentially overstepping and awarding more damages than the actual wrongdoing that warrants the non-dischargeable judgment. Do you have an argument against the smaller award he gave for the 523A6 component? Yes, because that's also, as Your Honor was saying, it starts with the $330,000 figure, and so that's the combined investment under the two agreements. And so from that point, the whole calculation of damages in the Washington case started with the total amount of the investment rather than just the one project on downing street. So you're saying the 523A6 award is also based on the Washington judgment as well? Yes, it is. And the wrongdoing under the 523A6 mirrors the wrongdoing under the 523A4, which was the misappropriation of the downing sale proceeds. So for that reason, I don't think the Washington court decided the same issue as Judge Albert as far as its calculation of damages, as far as the narrow scope of wrongdoing. I don't know that I'm really tracking what's going on here so well. Was there an embezzlement claim that Judge Albert acknowledged with respect to the first transaction? As far as the downing street, I'm not sure which one. That's what I mean. Yeah, the downing street, right. She sold the property. She was supposed to divvy up the proceeds. But let me just tell you where I'm having a problem with that. Money is given to your client. Your client uses that money and maybe something else to buy the property, right? Or not. Is there something left over after they bought the property? No. Okay. So if embezzlement is wrongfully taking money that's been entrusted to you, it kind of sounds like your client did what she was supposed to do. She bought the property. Yeah. Right. So after the fact, I mean, I'm having trouble figuring out why there's an embezzlement claim for what happens after the property is sold. I mean, the money wasn't trusted. It was used the way it was supposed to be used. Correct. And that's why Ms. Nguyen prevailed on the 523A2. Well, no, I mean, I'm struggling with why that's embezzlement. I mean, if later on you do something bad, it may well be a defalcation because you had a duty under the agreement to pay the money out. Correct. I'm struggling with the embezzlement piece of that. And if Judge Albert relied on that, I don't know what help that is. I guess that's my question. Yeah. I don't know. Okay. I struggle to see that too. Okay. And on the A6 part, there had to be something more than just there was a right under a contract to be paid a profit, right? I mean, that's effectively a contract claim. Yeah. 523A6 requires an intentional tort, so to speak. And yeah, I think he was piggybacking on the alleged defalcation. Okay. Got it. Okay. Yeah. Got it. Okay. Thank you. Yeah. And then as far as the attorney's fees, Miss Bowie is entitled to attorney's fees under the contract, right? But the contract's only as to the joint venture agreements. Anything ancillary regarding the exemptions and objection to exemptions in the bankruptcy case, that doesn't arise under the contract. And I don't think those fees were properly awarded. Unless the panel has any other questions. I'm all set. Thank you very much. Thank you very much. Thank you. Okay. Thanks to both of you. The matter is submitted. Yeah.
judges: Lafferty, Faris, and Spraker